UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

IN RE: KEURIG GREEN MOUNTAIN SINGLE-SERVE COFFEE ANTITRUST LITIGATION

*This Document Relates to the Indirect-Purchaser Actions*

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/16/2020

14-md-2542 (VSB)

**ORDER**

Appearances:

Robert N. Kaplan
Kaplan Fox & Kilsheimer LLP
New York, NY

Mark C. Rifkin
Wolf Haldenstein Adler Freeman & Herz LLP
New York, NY

Clifford H. Pearson
Pearson, Simon & Warshaw, LLP
Sherman Oaks, CA

*Proposed Settlement Class Counsel*

George S. Cary
Cleary Gottlieb Steen & Hamilton LLP
Washington, DC

Wendelynne J. Newton
Buchanan Ingersoll & Rooney PC
Pittsburgh, PA

*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

Indirect Purchaser Plaintiffs[1] ("Plaintiffs" or the "IPPs") and Defendant Keurig Green Mountain, Inc. ("Keurig" or "Defendant") have settled this antitrust collective action for $31,000,000. Plaintiffs request that the Court (1) grant preliminary approval of the Settlement Agreement and Release; (2) certify the Settlement Class for purposes of settlement only; (3) appoint Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), Pearson, Simon & Warshaw, LLP ("Pearson Simon"), and Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as Settlement Class Counsel; (4) appoint Plaintiffs as Settlement Class Representatives; (5) appoint JND Legal Administration ("JND") as Claims Administrator; (6) appoint Signature Bank N.A. as escrow agent; (7) approve the program for notice (the "Notice Plan"); and (8) appoint former United States District Court Judge Joseph J. Farnan Jr. ("Judge Farnan") as a Special Master. Defendant does not oppose this motion. For the reasons set forth herein, Plaintiffs' unopposed motion is GRANTED.

## I. Factual and Procedural Background

In early 2014, there were many actions filed in federal district courts around the country alleging that Keurig engaged in unlawful anticompetitive behavior. Among those suits were numerous actions filed by individual indirect purchasers. On March 20, 2014, the named plaintiff in one of the related cases moved the Judicial Panel on Multidistrict Litigation ("JPML") to centralize all of the cases in a single multidistrict litigation ("MDL") in this District. (*See* Doc. 1.) The proposed MDL encompassed three types of actions: direct purchaser class

---

[1] The Indirect Purchaser Plaintiffs are Wasif Bala, Yelda Mesbah Bartlett, Lavinia Simona Biasell, Linda Bouchard, Bouchard & Sons Garage, Inc., Luke Cuddy, Jonna Dugan, Erin Dunbar, Larry Gallant, Denise Gilmore, Patricia Hall, Jennifer Harrison, Teena Marie Johnson, Lori Jo Kirkhart, Kori Lodi, Vivid Hair Studio LLC, Wauneta Dibbern, John Lohin, Angus Macdonald, Edgar Medina, Jennifer Mileikowsky, Brier Miller Minor, David W. Nation, Patricia J. Nelson, Julie Rainwater, Betty Ramey, Lauren Jill Schneider, Shirley Anne Schroeder, Jason and Amy Stratman, and Toni Williams.

2

actions, indirect purchaser class actions, and individual actions by certain competitors of Keurig ("Competitor Plaintiffs"). (*Id.* at 1.) Although the Competitor Plaintiffs opposed centralization, (*id.*), the JPML concluded that all of the related actions, including those filed by the direct purchasers and indirect purchasers, raised "virtually identical factual questions concerning the conduct of Keurig," (*id.* at 2.) On June 3, 2014, pursuant to 28 U.S.C. § 1407, the JPML transferred these related actions to this District and assigned the action to me for consolidated pretrial proceedings as part of the MDL. (*Id.* at 3.) On June 26, 2014, I appointed interim co-lead counsel for the Named Plaintiffs and proposed indirect purchaser plaintiff class. (Doc. 36.)

On July 24, 2014, the IPPs filed a Consolidated Amended Indirect Purchaser Class Action Complaint. (Doc. 61.) They subsequently filed a Second Amended Complaint on February 11, 2015. (Doc. 238.) These complaints alleged that Keurig engaged in anticompetitive behavior in order to obtain an illegal monopoly and maintain artificially high prices for its K-Cup products, in violation of Sections 1 and 2 of the Sherman Act (15 U.S.C §§ 1 and 2), Section 3 of the Clayton Act (15 U.S.C. § 14), and numerous state statutes. On April 22, 2019, I granted Defendant's motion to dismiss the IPPs' claims under federal antitrust law, as well as claims brought under antitrust laws of seven states. (Doc. 581.) I denied Defendant's motion to dismiss the IPPs' claims brought under the antitrust laws of fourteen states and the District of Columbia. (*Id.*) On April 24, 2019, the IPPs filed a motion for reconsideration, in part, of the motion to dismiss. (Doc. 582.) I denied that motion on June 25, 2019. (Doc. 634.)

On June 21, 2019, the IPPs filed their Third Amended Complaint, which realleged violations of federal antitrust laws and the antitrust laws of several states. (Doc. 631.) Since that time, the parties have engaged in extensive discovery. On September 30, 2020, the IPPs filed their unopposed motion for preliminary approval of their proposed settlement with Defendant,

with a memorandum of law, three declarations, and accompanying exhibits. (Docs. 1112–17.)

## II. Discussion

### A. *Preliminary Approval of the Class Settlement*

District courts have discretion to approve proposed class action settlements. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). The parties and their counsel are in a unique position to assess the potential risks of litigation, and thus district courts in exercising their discretion often give weight to the fact that the parties have chosen to settle. *See Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693(PGG), 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013).

Review of a proposed settlement generally involves preliminary approval followed by a fairness hearing. *Silver v. 31 Great Jones Rest.*, No. 11 CV 7442(KMW)(DCF), 2013 WL 208918, at *1 (S.D.N.Y. Jan. 4, 2013). To grant preliminary approval, a court need only find "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n—E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980) (internal quotation marks omitted). Courts conducting this analysis "must make a preliminary evaluation as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, M-21-95, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (internal quotation marks omitted). Preliminary approval is typically granted "where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Silver*, 2013 WL 208918, at *1 (quoting *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005)).

Having reviewed Plaintiffs' submissions, including the proposed Settlement Agreement and Release, (Doc. 1114-1 (the "Settlement Agreement" or "Agreement")), I conclude that the settlement agreement merits preliminary approval.  *First*, the agreement appears to be the result of an intensive, months-long, good-faith process mediated by Judge Farnan—who, in addition to his decades on the bench as a respected jurist in federal district court, is also an experienced and highly sought after mediator, arbitrator, and Special Master.  (*See* Doc. 1113, at 10–11; Doc. 1116, ¶¶ 1–2.)  Judge Farnan reported "that at all times during the mediation process, counsel for the parties negotiated diligently, at arm's length, and in good faith."  (Doc. 1116 ¶ 8.)  Judge Farnan also noted that "counsel for both parties were highly experienced in antitrust litigation" and "had diligently prepared their cases factually and legally."  (*Id.* ¶ 4); *see also generally In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173–74 (S.D.N.Y. 2000) ("If the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.").

*Second*, the agreement does not have any obvious deficiencies and the settlement amount, at least preliminarily, appears reasonable.  The parties arrived at the $31 million figure based on Judge Farnan's recommendation for an amount that he determined was fair and reasonable "in view of all the strengths and weaknesses the case presents."  (Doc. 1116 ¶ 7.)  *Third*, the agreement appears to treat class members roughly equally.  The agreement sets forth a formula to determine the value of a class member's claim that depends on 1) the product purchase price in the jurisdiction where the member bought the product, and 2) the quality of proof of purchase presented by the class member.  (Doc. 1115-7 at 5–6.)  Plaintiffs' legal notice expert has testified that the agreement "provides the best notice practicable under the circumstances" and "is

5

designed to effectively reach a minimum of 70% of Class Members." (Doc. 1115 ¶ 38.) In light of these factors, I preliminarily approve the Settlement Agreement.

### B. *Conditional Certification of the Proposed Class*

In order to certify a class for settlement purposes, a court must find that the class satisfies all four requirements under Fed. R. Civ. P. 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one of the requirements listed under Fed. R. Civ. P. 23(b). Plaintiffs have requested that I certify the following Settlement Class:

> All individuals and entities in the United States and its territories that purchased Keurig K-Cup Portion Packs from persons other than Keurig and not for the purpose of resale, during the period September 7, 2010, to August 14, 2020 (except for claims under Mississippi law—which are for purchases during the period from March 14, 2011, to August 14, 2020, and Rhode Island law—which are for purchases from July 15, 2013, to August 14, 2020). Excluded from the Settlement Class are Keurig and its predecessors, subsidiaries, parents, affiliates, joint venturers, and their directors and executive officers, and parties to any supply, retail, or distribution contracts with Keurig relating to Keurig K-Cup Portion Packs or Keurig Brewers, as well as all federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, any judge or jurors assigned to this case, and Judge Farnan.

(Doc. 1113, at 23–24; Doc. 1114-1, ¶ 27.) Defendant agrees to this class definition for settlement purposes only. (Doc. 1113, at 24 n.13; Doc. 1114-1, ¶ 28); *see generally Tiro v. Pub. House Inv. LLC*, Nos. 11 Civ. 7679 (CM), 11 Civ. 8249 (CM), 2013 WL 2254551, at *3 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of a settlement only."). I provisionally certify for settlement purposes Plaintiffs' proposed class.

The Settlement Class meets the requirements in Rule 23(a). *First*, a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Settlement Class here is extremely large, likely consisting of thousands of people, and can therefore be presumed sufficiently numerous. *See Consol. Rail Corp. v. Town of Hyde Park*, 47

F.3d 473, 483 (2d Cir. 1995) (noting that "numerosity is presumed at a level of 40 members"). Joinder would be impractical given the relative size of the claims at issue.

*Second*, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The proposed class members all face several common questions of law and fact central to this case: "whether [Keurig] engaged in the anticompetitive conduct alleged, the scope of this conduct and whether this conduct resulted in any overcharge in the market for [the product]." *In re Buspirone Patent & Antitrust Litig.*, 210 F.R.D. 43, 57 (S.D.N.Y. 2002); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 509 (S.D.N.Y. 1996) ("Numerous courts have held that allegations concerning the existence, scope, and efficacy of an alleged antitrust conspiracy present important common questions sufficient to satisfy the commonality requirement of Rule 23(a)(2).") (collecting cases).

*Third*, "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This factor "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted). "Typicality . . . does not require that the situations of the named representatives and the class members be identical," so long as "all claims arise from the same price-fixing conspiracy." *In re NASDAQ*, 169 F.R.D. at 511. This factor is satisfied here, where all proposed class members face the same harm based on Defendant's alleged action.

*Fourth*, "the representative parties" must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiffs must meet two standards—that "class counsel . . . be qualified, experienced and generally able to conduct the litigation," and that "the class

7

members . . . not have interests that are antagonistic to one another." *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992) (internal quotation marks omitted). There is no indication that class counsel is not qualified and able to conduct the litigation, and Plaintiffs and class representatives have the same incentives—to vindicate the same alleged injuries due to Defendant's alleged anticompetitive behavior.

Finally, Plaintiffs argue that the Settlement Class meets the requirements of Rule 23(b)(3). Under Rule 23(b)(3), "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

"The predominance requirement [under Rule 23(b)(3)] is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re NASDAQ*, 169 F.R.D. at 517; *see also UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010) ("Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.") (internal quotation marks omitted). Predominance is met here, given that "[p]roof of the allegedly monopolistic and anti-competitive conduct at the core of the alleged liability is common to the claims of all the plaintiffs." *In re Buspirone Patent & Antitrust Litig.*, 210 F.R.D. at 58.

A proposed class meets Rule 23(b)(3)'s superiority requirement if "class adjudication . . . will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually." *Silver*, 2013 WL 208918, at *2 (internal

quotation marks omitted).  With so many class members across the country, it is far more efficient to adjudicate this as a class action.  *See In re NASDAQ*, 169 F.R.D. at 527 ("Multiple lawsuits would be costly and inefficient").  Class actions are particularly preferred where, as here, "proceeding individually would be prohibitive for class members with small claims."  *Seijas v. Republic of Arg.*, 606 F.3d 53, 58 (2d Cir. 2010).

As such, I certify the proposed class for settlement purposes only.

### C. *Appointment of Class Counsel, Class Representatives, Claims Administrator, Special Master and Escrow Agent*

Rule 23(g)(1)(A) requires that a district court consider the following in appointing class counsel:  "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  I appoint the firms of Kaplan Fox, Pearson Simon, and Wolf Halderstein as class counsel.  I had previously appointed these firms to serve as interim class counsel in this litigation.  (Doc. 36.)  Since that time, these firms have engaged in years-worth of briefing, motion practice and discovery.  Based on their efforts litigating, negotiating, and settling this case, I conclude that they meet the requirements of Rule 23(g).  I also appoint Plaintiffs as class representatives.

I further appoint JND as Claims Administrator.  JND's principals have more than 75 years-worth of combined class action legal administration experience, and JND has handled some of the largest recent settlement administration issues, including the Equifax Data Breach Settlement.  (Doc. 1115 ¶ 5.)  JND also has extensive experience in handling claims administration in the antitrust context.  (*Id.* ¶ 6.)  Accordingly, I appoint JND as Claims Administrator.

I also appoint Judge Farnan as Special Master.  As a federal judge, Judge Farnan "presided over hundreds of bench and jury trials involving complex commercial disputes," and has spent more than ten years since his retirement from the bench as a mediator, arbitrator, and special master focusing primarily on complex commercial disputes and class actions.  (Doc. 1116 ¶¶ 1–2.)  Judge Farnan has served as a mediator to Plaintiffs and Keurig in this litigation since February 2020, (*id.* ¶ 3), and Plaintiffs note that he "was instrumental in achieving common ground not only as to the size of the overall settlement, but on every material term of the resolution," (Doc. 1113 at 31.)  Given his expertise, experience, and familiarity with the case, I appoint Judge Farnan as Special Master to make recommendations regarding the settlement, notice, and allocation program.

The settlement agreement calls for Defendant to advance $250,000 of the funds into an escrow account within fourteen days of preliminary approval of the settlement, while providing the rest of the funds on January 6, 2021.  (Doc. 1114-1 ¶ 38.)  I appoint Signature Bank N.A. as escrow agent for this agreement.

### D. *Approval of Class Notice*

Rule 23(c)(2)(B) requires that:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . .  The notice must clearly and concisely state in plain, easily understood language:  (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  I have reviewed the Notice Plan, which proposes a digital effort involving popular social media and other websites, a print effort involving a half-page

publication in *People Magazine*, and a national press release. (Doc. 1115-2 at 5.) The plan estimates that the eight-week media campaign will reach about 70% of class members. (*Id.* at 4.) After review, I conclude that the Notice Plan proposed by the parties constitutes the best notice practicable under the circumstances and meets the requirements of due process. The plan also satisfies all of the seven elements of Rule 23(c)(2)(B) identified above.

### III.   Conclusion

For the foregoing reasons, Plaintiffs' unopposed motion, (Doc. 93), is GRANTED. I hereby set the following settlement procedure:

(1) Within 15 days of the date of this Order, Defendant will provide the Claims Administrator with the Rule 23 Class members and Collective Class members list and information as provided in the Settlement Agreement.

(2) Within 15 days of Defendant's provision of the Rule 23 Class members and Collective Class members list and information, the Claims Administrator shall mail the Notices.

(3) Rule 23 Class Members will have 60 days from the date the Notice is mailed to opt out of the settlement or object to it.

(4) Plaintiffs will file a motion for final approval of the Settlement Agreement no later than 15 days before the fairness hearing.

(5) The Court will hold a final fairness hearing on June 4, 2021 at 10:00 a.m. Logistical details regarding the fairness hearing will be placed on the docket at a later date.

(6) If the Court grants Plaintiffs' motion for final approval of the Settlement Agreement, the Court will issue a Final Order and Judgment. If no party appeals

the Court's Final Order and Judgment, the "Effective Date" of the settlement will be the date 30 days after entry of such Order.

(7) If rehearing, reconsideration or appellate review is sought, the "Effective Date" shall be the day after all appeals are resolved in favor of final approval.

(8) The Claims Administrator will disburse settlement checks to the Rule 23 Class members and Collective Class members, Class Counsel's attorneys' fees and expenses to Class Counsel, the Service Awards, and the Settlement Administrator's fee as provided in the Settlement Agreement.

(9) The parties shall abide by all terms of the Settlement Agreement.

SO ORDERED.

Dated: December 16, 2020
       New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge